IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CYDNEY[1] M. SANCHEZ,

      Plaintiff,

v.                                        CV 18-1214 JHR

ANDREW M. SAUL,[2]
Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Cydney M. Sanchez' Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], filed May 22, 2019. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this case and enter final judgment. [Docs. 5, 7, 8]. Having reviewed the parties' briefing, the relevant law, and the relevant portions of the Administrative Record,[3] the Court **denies** Ms. Sanchez' Motion and **affirms** the Commissioner's final decision to deny her benefits under the Social Security Act.

---

[1] The case caption at the top of Ms. Sanchez' Complaint and both of her briefs state her first name as "Cyndey." [*See* Docs. 1, 17, 20]. However, so far as the Court can tell, Ms. Sanchez' name is actually "Cydney." [*See, e.g.,* Doc. 2 (Motion to Proceed In Forma Pauperis); *AR* at 174, 176 , 195, 206 , 226, 408, 415].

[2] Commissioner Andrew Saul was automatically substituted for former Acting Commissioner Nancy Berryhill as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d) when he was sworn in as the Commissioner of Social Security on June 1 7, 2019.

[3] Documents 12 and 12-1 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination rather than CM/ECF document and page number assigned when it was filed with the Clerk.

## I.     <u>INTRODUCTION</u>

This Court's institutional role in a social security appeal is specific and narrow. The Court must affirm the final decision of the Commissioner where it is shown to be supported by substantial evidence and is free from harmful legal error. Ms. Sanchez argues that the administrative law judge ("ALJ") who denied her benefits failed to meet these deferential standards because she: (1) improperly rejected the opinions of Paula Hughson, M.D. (a psychiatric consultative examiner hired by the Administration) concerning Ms. Sanchez' mental impairments; (2) discounted Ms. Sanchez' account of the severity of her symptoms and their effect on her ability to work; (3) failed to develop the record "to clarify ambiguities surrounding the extent of Ms. Sanchez's physical impairments[;]" and, (4) failed to adequately assess whether Ms. Sanchez can perform the requirements of her past relevant work as a receptionist despite the mental limitations identified by Dr. Hughson. [*See generally* Doc. 17]. However, having carefully reviewed the Commissioner's decision, the Court finds that: (1) the ALJ's rejection of Dr. Hughson's opinions was supported by a legally-sound reason based on substantial evidence; (2) she adequately considered Ms. Sanchez' symptoms and their effect on her ability to work, and her finding that Ms. Sanchez can still work despite her complaints is supported by substantial evidence; (3) there was no need to further develop the record concerning Ms. Sanchez' physical limitations; and, (4) having rejected Dr. Hughson's opinions, the ALJ was not required to include the mental restrictions identified by Dr. Hughson in her analysis of whether Ms. Sanchez retains the capacity to return to her past relevant work as a receptionist. Therefore, because Ms. Sanchez has failed to demonstrate that the ALJ committed a reversible legal error or that her findings were unsupported by substantial evidence, the Commissioner's final decision to deny Ms. Sanchez benefits under the Act must be affirmed.

## II.    PROCEDURAL HISTORY

Ms. Sanchez applied for supplemental security income benefits under Title XVI of the Social Security Act on January 15, 2015 and disability insurance benefits under Title II of the Act on April 28, 2015. *AR* at 90, 174-177.[4] In support of her applications Ms. Sanchez alleged a disability onset date of April 15, 2014, due to arthritis in her left knee and hip, torn meniscus, and depression. *AR* at 37-38, 174. The Administration denied Ms. Sanchez' claims initially and upon reconsideration, and she requested a de novo hearing before an ALJ. *AR* at 35-86, 129-130.

ALJ Lillian Richter held a hearing on May 9, 2017, at which Ms. Sanchez and a Vocational Expert ("VE") appeared and testified. *AR* at 13-34. Although she had initially retained an attorney to help pursue her applications, Ms. Sanchez appeared at the hearing before the ALJ without an attorney or other representative. *AR* at 15-16. Despite being advised against proceeding without a representative and being provided the opportunity to postpone her hearing to find a new one, Ms. Sanchez decided to represent herself at the hearing. *Id.* Among other things, Ms. Sanchez testified that she was then working approximately twenty (20) hours per week in a seated position at a call center, and that she would likely be able to return to her past work as a receptionist (which ended, not because of her disability, but because the company she was working for went bankrupt). *See AR* at 20-25.

After the hearing, the ALJ issued an unfavorable decision on March 8, 2018. *AR* at 87-110. Ms. Sanchez, now aided by her present counsel, requested review of the ALJ's decision by the Appeals Council, but on October 22, 2018, the Council denied her request. *AR* at 1-12, 172-173. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*,

---

[4] While it is referenced in the ALJ's decision and by the Appeals Council (*see AR* at 5), the Court was unable to locate the actual application seeking supplemental security income benefits that Ms. Sanchez submitted to the Administration.

331 F.3d 758, 759 (10th Cir. 2003). Ms. Sanchez filed a timely Complaint appealing that decision

and invoking this Court's jurisdiction under 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a) on

December 21, 2018. [*See* Doc. 1]. The parties consented to the undersigned Magistrate Judge

presiding over this case on February 4, 2019, [Doc. 8], and briefing was completed on August 7,

2019. [Doc. 21].

III.     THE COMMISSIONER'S FINAL DECISION

A claimant seeking social security benefits under the Act must establish that she is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(l)(A),

1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step

sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).[5]

At Step One of the sequential evaluation process the ALJ found that Ms. Sanchez had

engaged in substantial gainful activity since her alleged onset date - for a period of approximately

nine months, spanning from the third quarter of 2016 through the first quarter of 2017. *AR* at 93.

However, because there was a continuous 12-month period during which Ms. Sanchez did not

---

[5] The Tenth Circuit summarized these steps in *Allman v. Colvin,* 813 F.3d 1326, 1333 n. l (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially
> gainful activity. *Wall v. Astrue*, 561 F.3d 1048 , 1052 (10th Cir. 2009). If not, the ALJ then decides
> whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ
> determines whether the impairment is "equivalent to a condition 'listed in the appendix of the
> relevant disability regulations.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.
> 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's
> impairment prevents [her] from performing [her] past relevant work. *Id.* Even if so, the ALJ must
> determine at step five whether the claimant has the RFC to "perform other work in the national
> economy." *Id.*

engage in substantial gainful activity, the ALJ elected to continue on with the sequential evaluation process, although she noted that Ms. Sanchez' "ability to work is inconsistent with the level of debility she alleges herein." *AR* at 93. At Step Two, the ALJ determined that Ms. Sanchez has the following severe impairments: obesity, degenerative joint disease of the knees bilaterally, insomnia, and myofascial muscle pain. *AR* at 93. Pertinent to her appeal, the ALJ determined that Ms. Sanchez' "medically determinable mental impairments of depression and dysthymic disorder ... do not cause more than a minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." *AR* at 94. In reaching this conclusion, the ALJ explicitly "considered" the findings by psychiatric consultative examiner Paula Hughson, M.D., which she summarized as follows:

> [Ms. Sanchez'] history showed she had no mental health treatment in the past or past psychiatric hospitalizations. During the exam [she] was able to complete all activities of daily living unassisted, was only limited in completing tasks by her movement limitations, had four work friends she was able to socialize with, and got along with others "good". Her mental status exam showed she was fully orientated, had a fully intact immediate and remote memory, showed good concentration during serial seven subtractions, and had a linear thought process. She reported she had a depressed mood and her affect was congruent with that. [Ms. Sanchez] had fair insight and judgment with an average fund of information.

*AR* at 95 (citing Exh. 4F - Dr. Hughson's Consultative Evaluation - *AR* at 408-413 (internal citations omitted)). At Step Three, the ALJ concluded that Ms. Sanchez' impairments do not meet or medically equal the regulatory "listings." *AR* at 95-97. While Ms. Sanchez directs the Court's attention to the fact that the ALJ found that none of her mental impairments were "severe" at Step Two [*see* Doc. 17, p. 1], she does not ultimately challenge the ALJ's findings at Steps One through Three. [*See generally* Doc. 17].

When a claimant does not meet a listed impairment at Step Three the ALJ must determine the extent to which she remains able to work before proceeding to identify jobs she is capable of

performing at Steps Four and Five. This assessment of the claimant's remaining ability is referred

to as her residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not

the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-

8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Ms. Sanchez retains the RFC to:

> perform a limited range of work at the sedentary exertional level ... except [she] can
> occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds.
> [She] can occasionally stoop, kneel, crouch, and crawl. She can never balance and
> should avoid exposure to unprotected heights[,] moving mechanical parts, and
> extreme cold. [Ms. Sanchez] is limited to work that is primarily performed at the
> workstation.

*AR* at 97.

Employing this RFC at Step Four, and relying on Ms. Sanchez' work history, her testimony

and the testimony of the VE, the ALJ determined that Ms. Sanchez can return to her past relevant

work as a receptionist. *AR* at 102-105. As, such, the ALJ did not proceed to Step Five, and denied

Ms. Sanchez benefits under the Act. *AR* at 105.

## IV. LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence and whether the correct legal standards were

applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d

569, 571 (10th Cir. 2014)). "[I]n making this determination, [this Court] cannot reweigh the

evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d

1264, 1266 (10th Cir. 2016). The Court must exercise "common sense" when determining whether

the substantial evidence standard has been met; if the Court can follow the ALJ's reasoning, the

decision must stand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The standard

for a decision to be supported by substantial evidence is low. "'Substantial evidence' means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Howard*

*v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d l 080, l 084 (10th Cir. 2007).

## V.     ANALYSIS

Ms. Sanchez asks the Court to reverse the ALJ's rejection of Dr. Hughson's opinions, find her assessment of the severity Ms. Sanchez' symptoms and their effect on her ability to work to be unsupported, require the Administration to recontact consultative examiner Dr. Young Rodriguez to opine as to whether or how her physical limitations affect her ability to work, and require the Administration to reassess Ms. Sanchez' ability to work in light of the limitations Dr. Hughson would impose on her RFC. [*See* Doc. 17, pp. 11-25]. However, as explained below, the ALJ's rejection of Dr. Hughson's opinions was valid, her assessment of Ms. Sanchez' symptoms and their effect on her abilities was adequate, she had enough evidence before her to make a decision without the need to recontact Dr. Young Rodriguez, and she based her conclusion that Ms. Sanchez can still work on a properly supported RFC. Therefore, because the ALJ's decision is free from legal error and supported by substantial evidence, the Court cannot grant Ms. Sanchez the relief she requests.

### A.  **The ALJ's rationale for rejecting Dr. Hughson's opinion about Ms. Sanchez' ability to work is consistent with the regulations and supported by substantial evidence.**

Under law, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. . . . [Sh]e must also discuss the weight [s]he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citations omitted). Ms. Sanchez does not argue that the ALJ failed to comply with this requirement - nor could she. As noted above, the ALJ considered and summarized the results of Dr. Hughson's examination at Step Two, where she concluded that Ms. Sanchez' depression and dysthymic disorder are nonsevere under the regulations. *AR* at 94-95. While this discussion

would not have been sufficient by itself, the ALJ later explicitly weighed Dr. Hughson's opinion when formulating Ms. Sanchez' RFC, as follows:

> I considered the opinion of Dr. Hughson at Exhibit 4F. I have relied on Dr. Hughson's examination findings, described above, which are generally benign. However, her conclusions of moderate limitations in concentration, adaptation and the ability to work without supervision are unsupported by her findings of perfect recall, the ability to do serial 7s, and generally normal mental status examination. Accordingly, I give her opinion little weight.

*AR* at 101. Thus, while Ms. Sanchez disagrees with the ALJ's decision to give little weight to (or "effectively reject")[6] Dr. Hughson's opinions that her abilities to concentrate, adapt, and work without supervision are impaired, there can be no dispute that the ALJ fulfilled her duty to consider and weigh those opinions. The question, therefore, is whether the ALJ's rationale for rejecting Dr. Hughson's restrictions is supported by law and substantial evidence - for, if it is, the Court may not re-weigh Dr. Hughson's opinion or substitute its judgment for the ALJ's. *Smith*, 821 F.3d at 1266.

There are six regulatory factors an ALJ should consider when weighing a medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 41 6.927(c). As noted by the Tenth Circuit:

> [w]hen evaluating the opinion of any medical source, an ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[6] The ALJ afforded "little weight" to Dr. Hughson's opinions, thereby "effectively rejecting" them under Tenth Circuit law. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841,844 (10th Cir. 2016) (same).

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished) (citing *Goatcher v. US. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c), 416.927(c)). An ALJ is "not required' to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.'" *Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). However, as compared with agency doctors who only review a claimant's medical records, "[e]xamining medical-source opinions" are "given particular consideration." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). Therefore, such an opinion "may be dismissed or discounted, of course, but . . . the ALJ must provide specific, legitimate reasons for rejecting it." *Id.*

Here, the ALJ appears to have focused on the third and fourth regulatory factors - the degree to which the Dr. Hughson's opinions were supported, and the consistency between her opinions and the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c) (3)-(4). In fact, as set forth above, while it encompassed these two factors the ALJ's rationale was limited to one stated reason - that Dr. Hughson's conclusion that Ms. Sanchez' abilities to concentrate, adapt, and work without supervision are limited is inconsistent with and unsupported by Dr. Hughson's examination findings (specifically, Ms. Sanchez' ability to perform perfect recall and serial 7s, and her generally normal mental status examination). *AR* at 101. Reliance on these factors was entirely proper, and Ms. Sanchez cites nothing to discredit the ALJ's conclusion that her examination results do not support Dr. Hughson's restrictions other than to accuse the ALJ of improperly substituting her own judgment for that of a physician. [*See* Doc. 17 , pp. 15-16]. However, this argument is a nonstarter. The regulations plainly require ALJs to make judgments about the weight a medical opinion should be given and implicit in this process is the notion that

an ALJ may disagree with a medical provider's conclusions. As long as the ALJ employs the regulatory factors and supports her reasoning with substantial evidence, there is nothing improper about such a result. The Court finds both of those conditions were met here, meaning the ALJ's decision to effectively reject Dr. Hughson's opinions must be affirmed.

In arguing to the contrary Ms. Sanchez misrepresents the record. As stated, the ALJ gave one reason for rejecting Dr. Hughson's restrictions. *AR* at 101. However, in her briefing, Ms. Sanchez identifies two additional "claims" that the ALJ supposedly relied on to reject Dr. Hughson's opinions: that they "were inconsistent with Ms. Sanchez's medical history showing no mental health treatment or prior psychiatric hospitalizations[,]" and that they were "inconsistent with Ms. Sanchez's reports that she required no assistance with activities of daily living as well as reports that she socialized with four of her friends from work and got along with others." [Doc. 17, pp. 12-13 (citing *AR* at 95)]. Ms. Sanchez expends roughly two pages of text in her opening brief arguing in support of her position that these "claims" are contrary to law, [*see* Doc. 17, pp. 13-15], and about four responding to the Commissioner's arguments in opposition in her reply brief. [*See* Doc. 20, pp. 1-5]. The Court agrees that neither reason would be valid, IF the ALJ had relied on them when weighing Dr. Hughson's opinion – but she did not. *Compare AR* at 95 (summary of Dr. Hughson's examination at Step Two) *with* AR at 101 (weight analysis when formulating RFC before Step Four). Ms. Sanchez' representation to the contrary is simply false. In fact, it was Dr. Hughson's findings, which the ALJ summarized at Step Two, that she later found inconsistent with Dr. Hughson's conclusions that Ms. Sanchez' mental abilities are impaired when she was deciding what weight to give those conclusions while formulating Ms. Sanchez' RFC. *Id.* Even a cursory review of the ALJ's decision and Dr. Hughson's report reveal that it was Dr. Hughson who noted, in her examination report, that Ms. Sanchez reported no history of mental

10

health treatment or psychiatric hospitalizations; that she maintained the ability to complete activities of daily living unassisted; that she socializes with four friends from work; and, that she considers her ability to get along with others to be "good." *AR* at 410. In other words, Ms. Sanchez, through counsel, has attempted to convince this Court that the ALJ relied on two improper and unsupported "claims" when it was Ms. Sanchez who made the statements supporting those very "claims" to Dr. Hughson. In sum, Ms. Sanchez' arguments are rejected as unsupported.[7]

**B. The ALJ adequately considered Ms. Sanchez' pain and other symptoms and reached a reasonable conclusion - that she retains the RFC to perform a restricted range of sedentary work despite these symptoms - in light of Ms. Sanchez' ability to work during the relevant period, objective testing showing at most moderate impairment, Ms. Sanchez' positive response to treatment, and her daily activities.**

Ms. Sanchez argues that the ALJ's RFC is not based on substantial evidence because she failed to account for Ms. Sanchez' pain and other symptoms and their effect on her ability to work. [Doc. 17, pp. 16-19; Doc. 20, p. 5]. Specifically, Ms. Sanchez complains that her daily activities do not indicate that she retains the capacity to work and that there was objective evidence to support her complaints of left knee pain; therefore, the ALJ erred by concluding that she can still work despite her symptoms, and the premises underlying that conclusion were neither "adequate" nor "legitimate" under Tenth Circuit law. [Doc. 17, pp. 17-19]. The Court is not convinced.

The Court begins with the proposition that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3P, 2017 WL 5180304, *2. Additionally, "subjective symptom evaluation," formerly known as

---

[7] While the Court will not issue an order to show cause to Ms. Sanchez or her counsel, it notes for the record that the lack of candor demonstrated when making these particular arguments is disappointing given counsel's extensive experience handling Social Security claims in this district. Additionally, counsel for the Commissioner is admonished to more carefully review the underpinnings of his final decisions in future cases so that the Commissioner's responsive briefing aids the Court in its review of the actual reasons for an ALJ's decision rather than perpetuating unsupported arguments made by claimants on appeal.

"[c]redibility[,][8] determinations are peculiarly the province of the finder of fact and will not be overturned when supported by substantial evidence." *Watts v. Berryhill*, 705 F. App'x 759, 763 (10th Cir. 2017) (unpublished) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)).

The basic process for an ALJ to consider the effects of a claimant's symptoms was announced in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), which is still applicable notwithstanding the change in syntax:

> the ALJ must consider and determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. 2017) (unpublished) (quoting *Keyes-Zachary*, 695 F.3d at 1166-67). An ALJ is not required to cite to *Luna* if she states and properly applies its paradigm. *Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016) (unpublished).

Factors under the regulations relevant to the determination of whether a claimant's pain is in fact disabling include:

> (i) [Her] daily activities; (ii) The location, duration, frequency, and intensity of [her] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [she] take[s] or [has] taken to alleviate [her] pain or other symptoms; (v) Treatment, other than medication, [she] receive[s] or [has] received for relief of [her] pain or other symptoms; (vi) Any measures [she] uses or [has] used to relieve [her] pain or other symptoms …; and (vii) Other factors concerning [her] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3P, 2017 WL 5180304, *7-8; *see Watts*, 705 F. App'x at 763. Findings pertaining to a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. But

---

[8] The Administration eliminated the use of the term "credibility" from its sub-regulatory policy for the purpose of clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, *2.

we do not require a formalistic factor-by-factor recitation of the evidence." *Watts*, 705 F. App'x at 763 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)). To the contrary, an ALJ need only discuss those factors that are "relevant to the case." SSR 16-3P, 2017 WL 5180304, *8.

"Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities[.]" SSR 16-3P, 2017 WL 5180304, *5. That said, the Administration "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* Rather, "if [it] cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then [it] carefully consider[s] other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *6.

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, [the Administration] will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [it] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities....

*Id.* at *8.

Here, the ALJ found Ms. Sanchez' "statements about the intensity, persistence, and limiting effects of [her] symptoms ... are inconsistent because the ... medical evidence shows no

more than moderate impairment of any functioning, and her continued work activity supports the sedentary [RFC]." *AR* at 98. The ALJ then summarized the evidence, including the results of Ms. Sanchez's left knee arthroscopy and subsequent treatment, her medical records, her failure to lose weight as recommended without adequate explanation, the medical opinions in the record, and the function reports submitted by Ms. Sanchez' friend and relatives indicating that she has "little difficulty with completing tasks such as personal care, making meals, walking a block, [and] lifting weight consistent with a sedentary exertional level." *See AR* at 98-101. The ALJ then concluded that Ms. Sanchez' allegation that she is medically disabled (and, therefore, unable to work) is not consistent with the objective medical evidence, her history of working within the RFC identified by the ALJ, her positive response to treatment, and her relatively unrestricted activities of daily living. *AR* at 101-102. In sum, the ALJ's evaluation of Ms. Sanchez' symptoms was well-supported by the regulatory factors. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3P , 2017 WL 5180304, *7-8.

Ms. Sanchez' arguments to the contrary invite the Court to re-weigh the evidence before the ALJ, credit her position that her conditions render her unable to work, and reach a different conclusion than the ALJ. However, where, as here, the premises underlying an ALJ's assessment of the effect of a claimant's symptoms on her ability to work are supported by substantial evidence, the Court is foreclosed from second-guessing the ALJ's resulting conclusion. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

**C. The ALJ was not required to further develop the record by asking consultative examiner Raul Young Rodriguez, M.D., to clarify Ms. Sanchez' ability to work because the ALJ's RFC finding incorporates his evaluation of her abilities and is otherwise supported by substantial evidence showing that Ms. Sanchez retains the RFC to perform a restricted range of sedentary work.**

While the burden to prove disability is on the claimant, "an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to [her] attention during the course of the hearing." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (quoted authority omitted). Ms. Sanchez does not argue that the record is incomplete or that the ALJ ignored the absence of specific medical records,[9] only that the ALJ should have contacted consultative examiner Raul Young Rodriguez, M.D. to clarify his opinions about Ms. Sanchez' functional limitations. [Doc. 17, pp. 19-23]. The Court is not convinced.

Dr. Young Rodriguez examined Ms. Sanchez and issued a report that the ALJ summarized and incorporated into her RFC discussion. *See AR* at 99-101, 415-417. After ascribing "significant weight" to Dr. Young Rodriguez' examination findings because of the nature of the examination and because they were consistent with the record, the ALJ noted that the doctor "failed to give a specific functional limitation which rendered his opinion less helpful ... than it otherwise might have been." *AR* at 101. Ms. Sanchez seizes this language and runs with it, arguing that the ALJ "should have asked Dr. Young Rodriguez how Ms. Sanchez's weight and degenerative joint disease impacted her ability to perform the functions that sedentary work requires." [Doc. 17, p. 22]. As Ms. Sanchez notes, sedentary work requires the ability to stand and/or walk for about two hours our of an eight-hour workday. [*Id.*, n. 24 (citing SSR 96-9p)]. Unfortunately for her, support for the notion that she is capable of performing the requirements of sedentary work exists

---

[9] Nor could she, as the ALJ endeavored to identify her missing medical records at the hearing and appears to have secured them. *See AR* at 18-19, 432-717.

elsewhere in the record. Therefore, there was no need for the ALJ to recontact Dr. Young Rodriguez and she had no obligation to do so.

An "ALJ is not required to act as the claimant's advocate in order to meet [her] duty to develop the record." *Maes*, 522 F.3d at 1097. As such, while Ms. Sanchez may now believe that Dr. Young Rodriguez would have opined that she is unable to work within her RFC if he had been asked, the ALJ was under no obligation to ask him that specific question. This is especially true where the ALJ expressly considered the doctor's findings, gave them "significant weight," and relied on other evidence of record to formulate Ms. Sanchez' RFC, which imputes to her only the ability to "perform a *limited* range of work at the sedentary exertional level[.]" *AR* at 97, 99-101 (emphasis added). In other words, the ALJ had no duty to contact Dr. Young Rodriguez for his opinion because she had enough evidence to make her decision, and the regulations only require the an ALJ to further develop the record where it is incomplete or inconsistent. *See* 20 C.F.R. §§ 404.1520b(b), 416.920b(b). Tellingly, nowhere in Ms. Sanchez' briefing does she identify a medical opinion that is inconsistent with the notion that she is capable of meeting the standing/walking requirement of the restricted range of sedentary work contemplated by her RFC. [*See generally* Doc. 17; Doc. 20]. And, as she admits, the record was complete: "[e]vidence of Ms. Sanchez's impairments due to morbid obesity and degenerative joint disease of the left knee was documented throughout the medical evidence[.]" [Doc. 17, p. 20]. In sum, Ms. Sanchez has failed to convince the Court that the ALJ committed a reversible error by not contacting Dr. Young Rodriguez and asking him to state an opinion about her ability to stand/walk for around two hours out of an eight-hour workday when evidence supporting her RFC (which even limits her to "work that is primarily performed at the workstation," *AR* at 97), is present in the record, and when she

was not asked to do so by Ms. Sanchez and had no duty or reason to independently do so in light of the record before her.

**D. The ALJ was not required to include mental limitations identified by Dr. Hughson in her questioning of the Vocational Expert and substantial evidence supports her Step Four conclusion that Ms. Sanchez retains the RFC to return to her past relevant work as a receptionist.**

Finally, Ms. Sanchez argues that the ALJ's Step Four[10] conclusion - that she retains the ability to return to her previous work as a receptionist - is unsupported by substantial evidence because the ALJ omitted mental limitations identified by Dr. Hughson in her RFC finding and hypothetical questions to the VE. [*See* Doc. 17, pp. 23-25]. Having reviewed the ALJ's Step Four analysis, the Court disagrees.

As noted above, the ALJ's rejection of Dr. Hughson's opined limitations on Ms. Sanchez' abilities, and her resulting RFC finding, is supported by substantial evidence. As such, the Court disagrees with Ms. Sanchez' argument that the ALJ "erred at phase two[11] [of Step Four] because she compared the RFC with the physical demands of a receptionist position and ignored Ms. Sanchez's non-exertional and mental limitations." [Doc. 17, p. 24]. Rather, as the Commissioner correctly argues, "[t]he ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."

---

[10] At step four, the Commissioner employs the claimant's RFC and compares it with the demands of her past relevant work to determine if she can still perform the essential functions of that work, despite her impairments. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

[11] There are "three phases of evaluation the ALJ must complete as part of step four of the sequential analysis." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). As summarized in *Doyal*:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id.* (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). As noted in *Doyal*, "[a]n ALJ may rely on information supplied by the VE at step four." *Id.*

[Doc. 19, p. 11, n. 7 (quoting *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995))]. Therefore, because the ALJ rejected Dr. Hughson's opinion when formulating Ms. Sanchez' RFC, she was under no duty to compare the mental limitations identified by Dr. Hughson with the requirements of a receptionist position. Instead, the ALJ did what was required at Step Four by: formulating Ms. Sanchez' RFC (phase 1); examining the demands of a receptionist position by reference to the Dictionary of Occupational Titles and the VE's testimony (phase 2); and determining that Ms. Sanchez retains the ability to meet those demands despite the limitations placed on her RFC by reference to Ms. Sanchez' work history and the VE's testimony (phase 3). *See AR* at 102-105. In other words, the ALJ's Step Four conclusion is supported by substantial evidence and free from legal error.

## VI.    ORDER

Ms. Sanchez has failed to convince this Court that the Commissioner's final decision to deny her Social Security benefits under Titles II and XVI of the Act was tainted by legal error or unsupported by substantial evidence. Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Cydney Sanchez' Motion to Reverse and  Remand  for a Rehearing with Supporting Memorandum [Doc. 17], is **DENIED** and the decision of the Commissioner is **AFFIRMED**. A final judgment under Rule 58 will be entered concurrently with this Memorandum Opinion and Order.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE
Presiding  by Consent